Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
3 School Street, Suite 207B
Glen Cove, New York 11542
516.671.1150
smoser@moseremploymentlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Daniel Anacacy,

          Plaintiff,    Case No. 19-cv-7126

- *against* -

Panera, LLC, Doherty Enterprises, Inc., Doherty Breads, LLC and John Doe,

          Defendants.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Daniel Anacacy hereby alleges:

## INTRODUCTION

1. Plaintiff brings this lawsuit against the Corporate Defendants (as hereinafter defined) under Title II of the Civil Rights Act of 1964 (Public Accommodations Act). 42 U.S.C. § 2000a et seq. and under 42 U.S.C. § 1981.

2. Plaintiff also brings this lawsuit against John Doe under the New York State common law for the intentional torts of assault, battery and false imprisonment.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 as amended ("'§ 1981") and the Civil Rights Act of 1964, 42 U.S.C. § 2000(a) *et seq.* as amended ("Title II") and 28 U.S.C. § 1331.

4. Venue is proper in the Eastern District of New York because the claims alleged herein arose in this District.

## PARTIES

5. Plaintiff Daniel Anacacy is a resident of Nassau County, New York.

6. Plaintiff is black.

7. Defendant Panera, LLC is a Delaware limited liability company.

8. Defendant Panera, LLC is authorized to do business in the State of New York.

9. Doherty Enterprises, Inc. is a New Jersey corporation.

10. Doherty Enterprises, Inc. is authorized to do business in the State of New York.

11. Doherty Breads, LLC is a New York limited liability company.

12. Defendants Panera, LLC, Doherty Enterprises, Inc., and Doherty Breads, LLC (collectively "the Corporate Defendants") together own, operate and manage a Panera Bread restaurant located at 165 Old Country Road, Carle Place, New York in the County of Nassau ("Carle Place Panera").

13. Carle Place Panera is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2).

14. Carle Place Panera affects commerce within the mean mg of 42 U.S.C. § 2000a(C)(2).

15. John Doe is natural person whose true name is unknown to the Plaintiff.

16. John Doe was an employee of the Corporate Defendants.

17. John Doe was a cashier at the Carle Place Panera and is referred to herein as "the cashier."

18. Plaintiff will seek to amend the Complaint to specifically name the John Doe defendant after learning his true name.

**FACTS**

19. Panera, LLC has developed a phone app ("Panera Bread App") which is available for download onto smartphone devices.

20. Through the Panera Bread App, Panera, LLC offers services including, but not limited to, online ordering and pre-payment of orders for pick-up at Panera locations.

21. Carle Place Panera has a designated "Rapid Pick-Up" shelf for customers ordering through the Panera Bread App.

22. The "Rapid Pick-Up" shelf is accessible to customers.

23. The "Rapid Pick-Up" shelf faces the customer dining room.

24. Carle Place Panera prepares the online order and attaches a copy of the receipt with the customers' name to the order.

25. The bag or container with the online order is then place in the "Rapid Pick-Up" shelf.

26. Customers do not have to show proof of purchase in order to retrieve their orders from the "Rapid Pick-Up" shelf.

27. The "Rapid Pick-Up" shelf is self-service – customers find their name and pick up their order.

28. On or about May 12, 2019 the Plaintiff Daniel Anacacy was at home. He placed an order for a Tomato soup and a sandwich using the Panera Bread App for pickup at the Carle Place Panera.

29. When he entered the Carle Place Panera, he was wearing a durag (or "do-rag"), a hoodie, and sweatpants.

30. Upon entering the Carle Place Panera, the Plaintiff glanced at a cashier (sued herein as "John Doe") and the two made eye contact.

31. The cashier was a Hispanic male.

32. The cashier stared intently at the Plaintiff.

33. The Plaintiff proceeded to the "Rapid Pick-Up" shelf (the "pick-up shelf") to look for his order.

34. As the Plaintiff walked to the pick-up shelf, he sensed that someone was following him.

35. Upon arriving at the pick-up shelf, the Plaintiff noticed that the cashier had left his station and was standing near him, watching him retrieve his order.

36. The Plaintiff picked up his order, which was in a paper bag, and proceeded towards the drink station for a cup of water.

37. The cashier followed the Plaintiff to the drink station.

38. While at the drink station, the Plaintiff had a cup of water.

39. The cashier stared at the Plaintiff intently and left briefly, only to return.

40. When the cashier returned, he again stared at the Plaintiff intently, making the Plaintiff very uncomfortable.

41. When the Plaintiff attempted to leave the restaurant, the cashier stood directly in his path and prevented him from leaving.

42. The cashier demanded to see the Plaintiff's receipt.

43. The Plaintiff asked "Why?"

44. The cashier repeated "Let me see your receipt!"

45. The cashier then attempted to grab the bag of food from the Plaintiff's hand.

46. When the cashier attempted to grab the bag of food, he came into contact with the Plaintiff.

47. The Plaintiff became agitated and asked, "What are you doing?"

48. The cashier exclaimed "I want to see if that's your food" and again reached for the bag. This time the employee was able to grab hold of the bag and tore the bag. The bag of food fell to the floor.

49. At this point in time, the Plaintiff was the only black customer in the Carle Place Panera.

50. The Plaintiff asked the cashier "What the fuck are you doing?"

51. The cashier responded, "I just wanted to know if that's your food."

52. The Plaintiff picked up his food from the floor and stated, "Go get your manager."

53. As the cashier walked away he mumbled something under his breath.

54. The incident happened in front of other customers and employees of Carle Place Panera.

55. The Plaintiff was embarrassed and humiliated by the incident.

56. The Plaintiff followed the cashier to the front of the restaurant.

57. The cashier disappeared into the non-public area of the restaurant.

58. Shortly thereafter, the general manager of Carle Place Panera, Daniel Botta emerged. At this point the cashier was standing in the kitchen area and his face was visible.

59. Daniel Botta is a white male.

60. Daniel Botta asked the Plaintiff "What's going on?"

61. The Plaintiff responded, "You need to ask him?" pointing to the cashier.

62. Mr. Botta told the cashier "Go back in the office."

63. The Plaintiff then explained to Daniel Botta how he had purchased his food online through the mobile app, retrieved his food, and was confronted and prevented from leaving the restaurant, and how the cashier had grabbed the bag of food out of his hand. He showed Mr. Botta the receipt.

64. Mr. Botta admitted to the Plaintiff that Panera employees are not supposed to follow customers through the restaurant.

65. Mr. Botta admitted to the Plaintiff that Panera employees are not supposed to demand to see customers' food orders that have been picked up.

66. The Plaintiff insisted that Botta ask the cashier "why he did this", adding "He knows why he did it, and its disrespectful."

67. Botta's primary concern was to "re-bag" the food which the Plaintiff had picked up off of the floor of the restaurant and for the Plaintiff leave the restaurant. Mr. Botta promised the Plaintiff "I will talk to him. Come back and I will give you an answer."

68. Based upon these promises, Mr. Anacacy agreed to leave the restaurant.

69. Mr. Anacacy and his fiancé, Alice Boadi, returned to the Carle Place Panera approximately one week later.

70. Alice Boadi is black.

71. When the couple arrived at the restaurant, the cashier who had accosted the Plaintiff was at the front counter.

72. When the cashier saw the Plaintiff enter the restaurant, the cashier left his station and disappeared into the kitchen/office area.

73. Shortly thereafter, Daniel Botta emerged.

74. Daniel Botta informed the Plaintiff "I spoke to the kid and he said he didn't do anything wrong. I'm not sure what you want me to do about it."

75. The Plaintiff and his fiancé were stunned. Mr. Anacacy asked, "Is that the kind of response that you would give to a white customer?"

76. Mr. Botta shrugged his shoulders and repeated "I don't know what you want me to say."

77. When the Plaintiff insisted that the confrontation had been racially motivated, Daniel Botta again responded "I don't know what you want me to do."

78. When Mr. Anacacy asked Mr. Botta whether he had reviewed the video surveillance, he responded "There's no need to check the camera."

79. The Plaintiff's fiancé expressed her opinion to Mr. Botta that his response was "fucked up", "disrespectful", "vague", and "nonchalant."

80. The Plaintiff's fiancé also suggested that that it appeared as though Mr. Botta approved of his employee's treatment of "people who look like us."

81. Daniel Botta smirked, and responded that her accusation made "no sense" because the cashier was "Spanish" and "gay."

82. Daniel Botta added that his wife was "Chinese" and that his children were "half-Chinese", so he doesn't discriminate.

83. The Plaintiff's fiancé asked Daniel Botta whether he was aware that even black people can discriminate against other black. He again stated "I don't know what you want me to do."

84. The Plaintiff and his fiancé suggested that at the very least, the offending cashier should be disciplined and should apologize to Mr. Anacacy.

85. Mr. Botta repeated "I spoke to the kid and I don't believe it was racially motivated."

86. When the Plaintiff and his fiancé insisted that Mr. Botta's actions, and the actions of his employee were disrespectful and racist, he responded "To be honest I thought we were finished with this."

87. On June 7, 2019 Plaintiff's counsel hand delivered a demand to preserve the surveillance footage to the Carle Place Panera.

88. Thereafter, counsel for Carle Place Panera confirmed that Carle Place Panera had in fact preserved the video surveillance of the incident.

## COUNT I

## VIOLATION OF THE RIGHT TO MAKE AND ENFORCE CONTRACTS,

## 42 U.S.C. § 1981

## AGAINST THE CORPORATE DEFENDANTS

89. Plaintiff realleges and incorporates by reference all paragraphs above, as if set forth fully herein.

90. Defendants, acting through their officers, employees, and agents, have engaged in practices which denied to Plaintiff, on account of race or color, the right to make and enforce contracts and by denying Plaintiff the same right to make and enforce contracts as is enjoyed by white citizens of the United States in violation of 42 U.S.C. § 1981.

91. Defendants' violations of Section 1981 injured and damaged Plaintiff.

92. Defendants have intentionally, deliberately, willfully and callously disregarded the Plaintiff's rights.

93. By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 1981.

## COUNT II

## VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT OF 1964 (PUBLIC ACCOMMODATIONS ACT), 42 U.S.C. § 2000A ET SEQ. AGAINST THE CORPORATE DEFENDANTS

94. Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

95. The Carle Place Panera is a place of public accommodation under 42 U.S.C. §2000a(b)(1) and affects commerce within the meaning of 42 U.S.C. § 2000a(c)(1).

96. Defendants, acting through their officers, employees, and agents, denied Plaintiff, because of his race or color, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Carle Place Panera.

97. The conduct of Defendants described above constitutes resistance to the full and equal enjoyment by the Plaintiff of rights secured by 42 U.S.C. §§2000a et seq. because of his race and color, and this conduct was of such a nature and was intended to deny the full exercise of such rights.

## COUNT III

## NEW YORK COMMON LAW TORT - ASSAULT

## AGAINST JOHN DOE

98. Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

99. The cashier, John Doe, intentionally placed the Plaintiff in apprehension of imminent harmful or offensive contact.

## COUNT IV

## NEW YORK COMMON LAW TORT - BATTERY

## AGAINST JOHN DOE

100. Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

101. John doe intentionally made bodily contact with the Plaintiff.

102. The contact was offensive in nature.

## COUNT V

## NEW YORK COMMON LAW TORT – FALSE IMPRISONMENT

## AGAINST JOHN DOE

103. Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

104. Defendant John Doe intended to confine Plaintiff.

105. Plaintiff was conscious of the confinement.

106. Plaintiff did not consent to the confinement.

107. The Confinement was not otherwise privileged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an Order:

a. Declaring that the discriminatory practices of the Corporate Defendants violate Title II of the Civil Rights Act of 1964. 42 U.S.C. § 2000a et seq. and 42 U.S.C. § 1981;

b. Enjoining Corporate Defendants, their employees, agents, and successors, and all other persons in active concert or participation with them, from engaging in any act or practice which on the ground of race and/or color, denies or abridges any rights secured by Title II of the Civil Rights Act of 1964. 42 U.S.C. § 2000a et seq. or 42 U.S.C. § 1981;

c. Requiring Corporate Defendants, their employees, agents, and successors, and all other persons in active concert or participation with any of them to take such affirmative steps as may be necessary to remedy the past unlawful conduct and prevent future unlawful conduct;

d. Awarding Plaintiff compensatory damages against all defendants;

e. Awarding Plaintiff punitive damages against all defendants;

    f.   Awarding Plaintiff the cost of this action and reasonable attorneys' fees against the Corporate Defendants;

    g.   Awarding Plaintiff pre-judgment and post-judgment interest on the foregoing sums;

    h.   Plaintiff further prays for such additional relief as the interests of justice may require.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

Dated: Glen Cove, New York
December 19, 2019

Respectfully,

MOSER LAW FIRM, P.C.

_____
By: Steven J. Moser, Esq. (SM1133)
3 School Street, Suite 207B
Glen Cove, New York 11542
516.671.1150
smoser@moseremploymentlaw.com