

**MOSER LAW FIRM, P.C.**

**Steven J. Moser**
Tel:  516.671.1150 x 9
Direct:  631.759.4054 (voice, text & fax)

March 10, 2020

VIA ECF

Hon. Eric N. Vitalino, USDJ
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Anacacy v. Panera, LLC,* 19-cv-7126
          Response to Defendants' Request for Pre-Motion Conference

Dear Jude Vitalino:

I represent the Plaintiff Daniel Anacacy.  I write in response to the Defendants letter requesting a pre-motion conference dated February 28, 2020 (ECF No. 8).

## FACTS

Its May 12, 2019.  Daniel Anacacy, a black male, is at home.  He uses his smartphone to place an order at the Carle Place Panera with the Panera "App."  He orders a soup and sandwich.  After the order is placed, it is transmitted to the restaurant, prepared, and left in a "pick-up shelf."

Mr. Anacacy, intending to return home after picking up his food, leaves his house wearing a do-rag and a hoodie.

Mr. Anacacy drives to the restaurant.  He opens the door and enters.  A cashier eyes him suspiciously.  The cashier leaves his register and follows Mr. Anacacy to the pickup shelf, and again to the soft-drink station, where he continues to surveil him.  Mr. Anacacy starts walking from the soft drink station towards the exit.  In the soft-drink area the Cashier confronts him and demands to see his receipt.  When Mr. Anacacy asks "why" the cashier grabs the bag, and the bag is torn.  The food falls to the floor of the restaurant.

Mr. Anacacy picks up his food off the floor.  He carries the soup in one hand and sandwich in the other to the front of the restaurant to report to the manager what has happened.  The manager doesn't offer to replace the food.  The manager simply puts the fallen soup and sandwich in a new bag and promises Mr. Anacacy that he will talk to the offending employee.  He tells Mr. Anacacy to return to the restaurant at a later date.

As requested, Mr. Anacacy returns to the restaurant one week later.  He is accompanied by his fiancé.  The manager tells the couple ""I spoke to the kid and he said he didn't do



Plaintiff's Response to Defendants' Request for Pre-Motion Conference (ECF No. 8)
*Anacacy v. Panera, LLC,* 19-cv-7126 (ENV)(RLM)
March 10, 2020
Page 2 of 5

anything wrong. I'm not sure what you want me to do about it." He defends the cashier on the basis that the cashier is gay and Hispanic; and therefore, the claim that the incident was based on race "makes no sense." He defends himself on the basis that his wife is "Chinese" and his children are "half Chinese", so he doesn't discriminate.

Panera claims that the Plaintiff's 1981 claims must be dismissed, because there was no contractual relationship between the parties when the discrimination occurred. Panera also claims that the Plaintiff lacks standing to require the Defendants to take remedial measures to eliminate future discrimination. Although the Defendants have the right to make a motion to dismiss, such a motion would be futile, and the parties' efforts are better spent in discovery. The motion to dismiss is only "partial", and the case will proceed even if the motion is granted. Discovery looks the same, with or without the dismissal of the 1981 claims.

## LAW

42 USC § 1981 guarantees to all persons, regardless of race, the equal right to "make and enforce contracts."

In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), the Supreme Court narrowly interpreted the words "to make and enforce contracts" to apply only to pre-contract formation discrimination, and the equal right to enforce contracts in legal proceedings. *Patterson*, 491 U.S. at 177, 109 S. Ct. 2363, 105 L. Ed. 2d 132. Because the plaintiff alleged that she was discriminated against on the basis of her race *during* her employment (i.e. after the employment contract had been formed) the Court found that she was not protected by 1981. *Patterson*, 491 U.S. at 177, 109 S. Ct. 2363, 105 L. Ed. 2d 132*; See discussion in CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 450, 128 S. Ct. 1951, 1957 (2008)

In 1991 Congress passed the Civil Rights Act of 1991, 105 Stat. 1071, which was designed to supersede Patterson. *See CBOCS W., Inc.*, 553 U.S. at 450, 128 S. Ct. at 1957. The new law changed 42 U.S.C. § 1981 by redesignating § 1981 as § 1981(a), and adding a new subsection, (b), which, states:

> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the *enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

(emphasis supplied).

Defendants cite to cases in which courts have held that once retail merchandise is purchased, there is no longer any "contractual relationship" between the parties entitled to the protection of Section 1981. The two primary cases relied upon by the Defendants are *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006) and *Youngblood v. Hy-Vee Food*



MOSER LAW FIRM, P.C.

Plaintiff's Response to Defendants' Request for Pre-Motion Conference (ECF No. 8)
*Anacacy v. Panera, LLC,* 19-cv-7126 (ENV)(RLM)
March 10, 2020
Page 3 of 5

*Stores, Inc.*, 266 F.3d 851, 854 (8th Cir. 2001).

In *Bishop*, 414 F. Supp. 2d 385, the Defendant retailer had a store policy of checking receipts at the door. The Plaintiff, apparently aware of the policy, purchased a doll but then refused to supply his receipt at the door when asked. *See Bishop v. Henry Modell & Company, Inc. et al.* 2008-cv-07541 (S.D.N.Y.) and *Bishop v. Best Buy, Inc. et al.,* 2008-cv-08427 (S.D.N.Y.)(in which Bishop sued other retailers on facts virtually identical to the Toys "R" Us case); *see also Bishop v. Two Unknown Named Police Officers of the New York City Police Department John Doe Police Officer No. 1 et al.*, 2004-cv-02436 (S.D.N.Y.) and *S.B. v. Suffolk County et al.,* 2013-cv-00446 (E.D.N.Y.)(in which Bishop sued the police *pro se* for alleged violations of Section 1983).

In *Youngblood*, a convenience store employee saw the Plaintiff with a cannister of beef jerky under his shirt. Youngblood then placed the cannister back on the shelf and selected another cannister of beef jerky for purchase. The store employee checked the cannister that Youngblood had placed back on the shelf and found it almost empty. Before Youngblood left the store, the employee checked the cannister of beef jerky that Youngblood had just purchased and found that it was "crammed full" of beef jerky. *Youngblood*, 266 F.3d at 853.

## THE DEFENDANT'S PARTIAL MOTION WILL BE UNSUCCESSFUL AND WILL ONLY DELAY

Defendants claim that this case is no different than *Bishop* or *Youngblood*, and that therefore the 1981 claims must be dismissed. The Defendants are incorrect.

The Defendants essentially ask this Court to make a factual determination – namely that the Plaintiff received the "enjoyment of all benefits, privileges, terms, and conditions" of his contractual relationship with Panera. Such a question of fact is not appropriate for a motion to dismiss.

Unlike the purchase of merchandise in the retail setting, the purchase or even consumption of food in the restaurant setting does not complete the contractual relationship. *See Perry v. Burger King Corp.*, 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (holding use of customer bathroom within scope of contractual relationship between customer and fast food restaurant).

The Plaintiff was deprived of the benefits if his contract with Panera. The right to be free to retrieve his food without being pursued and surveilled; the right to not be accosted; the right to not have his food bag be torn; the right to not have to pick up his food order from the floor of the restaurant, and the right to receive a fresh sandwich and new hot soup once it was brought to the managers' attention that the food had fallen to the floor can all be easily understood as "benefits" of the contract.



MOSER LAW FIRM, P.C.

Plaintiff's Response to Defendants' Request for Pre-Motion Conference (ECF No. 8)
*Anacacy v. Panera, LLC,* 19-cv-7126 (ENV)(RLM)
March 10, 2020
Page 4 of 5

Bishop and Youngblood got what they paid for. Bishop received his doll. Arguably, Youngblood got more beef jerky than he paid for. The question in this case is "Did Anacacy get what he paid for." The answer is no. He did not pay to be surveilled, followed, and have his food bag torn. He did not pay to eat food that had fallen to the floor, and he did not pay for a cold soup. He was asked to return to the store, only to be insulted by the General Manager.

## THE PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD NOT BE DISMISSED AT THIS EARLY STAGE

Defendants claim that the Plaintiff is not entitled to injunctive relief, because "[e]xcept for the one instance where he alleges to have gone to the café with his fiancé to confront the manager, Plaintiff does not allege that he ever returned to the café to purchase food, or that he has any plans to do so in the future." In other words, if Mr. Anacacy was discriminated against on the basis of his race, the solution is simple - "Don't come back."

### The Plaintiff's Use of the Panera App Constitutes a Continuing Contractual Relationship Between the Parties

The use of the Panera App constitutes a continuing contractual relationship between the parties whereby each receives a benefit. The Plaintiff receives "rewards" which are tied to the use of the App. (See "Terms of Use", available at https://www.panerabread.com/en-us/company-information/terms-of-use.html, and annexed hereto as Exhibit 1). Each time the user places an order with the App, the user earns rewards, which include promotions and free food. Ex. 1, at 6-7. Panera receives benefits from the use of the app including increased sales. Panera also collects information from users who have downloaded the app, including geolocation information, which is used by Panera "to provide personalized messaging or content and/or for marketing purposes by email, push notifications, online or in-app advertising or otherwise." Ex 1, at 11.

### The Likelihood of Continuing Discrimination Exists

The General Manager of the Carle Place Panera believes that people who are discriminated against cannot discriminate others. For example, he told the Plaintiff the claim that the Plaintiff was profiled by the cashier made no sense" because the cashier was a gay Hispanic. The General Manager also believes that someone who does not discriminate against one group, is free from discrimination against all other groups. For example, the General Manager told the Plaintiff that he does not discriminate, because he is married to a Chinese woman and his children are "half Chinese."

The General Manager is still employed at the Carle Place Panera. The General Manager's statements indicate that he is blind to his own prejudices and to the potential prejudices of his subordinates. These statements reveal the General Manager's belief that



Plaintiff's Response to Defendants' Request for Pre-Motion Conference (ECF No. 8)
*Anacacy v. Panera, LLC,* 19-cv-7126 (ENV)(RLM)
March 10, 2020
Page 5 of 5

unconscious bias simply does not exist.  The statements also suggest a complete lack of adequate training by Panera.

Starbucks made news in 2018 when two black men were arrested while waiting for business associates to arrive.  In response, Starbucks closed all stores and developed an unconscious bias and race discrimination training program.  Rather than following Starbuck's example, Panera takes the position that the Plaintiff's claims for declaratory relief should be dismissed.  In other words, they should not be required by this Court do to anything to prevent discrimination.

## CONCLUSION

We do not ascribe to the Defendants any evil motive.  Panera, its General Manager, and the cashier likely will formulate justifications for the incident.  However, each of us has prejudices which have been developed over a lifetime, and the first step to eliminating such prejudices is to be open to the possibility that they may exist.  Without the courage for reflection and self-examination, we have no chance of eliminating or reducing bias.

For the foregoing reasons, we hope that the Defendants will withdraw their request to file a motion to dismiss the Plaintiff's claims under 1981 and the request for declaratory relief.

Respectfully submitted,

*Steven J. Moser*

Steven J. Moser