UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EDGAR GUEVARA and LORENA M. GUEVARA,
individually and on behalf of all others similarly situated,

                                      Plaintiffs,

                Case No. 15-CV-02895 (GRB)

        - *against* -

SIROB IMPORTS, INC., NICK BOBORIS and PETER
BOBORIS,

                                   Defendants.
------------------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 E. Main St.
Huntington, NY  11743
(516) 671-1150
(631) 759-9766
Steven.Moser@moserlawfirm.com

# TABLE OF CONTENTS

Statement of Facts ........................................................................................................1

argument ......................................................................................................................2

    I.   THE "RETAIL MERCHANDISE" RULE IS INAPPLICABLE TO THE RESTAURANT INDUSTRY ...................... **Error! Bookmark not defined.**

    II.  THE PLAINTIFF HAS SUFFICIENTLY PLED THAT HE WAS DENIED THE "ENJOYMENT OF ALL BENEFITS, PRIVILEGES, TERMS AND CONDITIONS OF THE CONTRACTUAL RELATIONSHIP" ...................3

        A.  The Plaintiff is Entitled to Equal "Enjoyment of All Benefits, Privileges, Terms and Conditions" of His Contract With Panera ...............................3

        B.  Food Service and Hospitality Industry Cases Are "Easily Distinguishable" From "Retail Merchandise" Cases ...............................4

        C.  Mr. Anacacy has sufficiently pled facts showing that he was deprived of the benefits of his contract with Panera. ...................................................5

            1.  Mr. Anacacy alleges facts which can easily be understood to constitute a deprivation of the full benefits of his contract with Panera. ......................................................................................5

            2.  Panera broke its promises of good customer service to Mr. Anacacy ...................................................................................................6

            3.  By serving Mr. Anacacy food that had been on the floor of the restaurant, Panera violated the terms of its contractual relationship with Mr. Anacacy and violated the New York Sanitary Code ..........6

    III. DEFENDANTS' REQUEST IS A SUMMARY JUDGMENT MOTION IN DISGUISE, AND THEREFORE SHOULD BE DENIED. ............................7

    IV. DRAWING ALL INFERENCES IN FAVOR OF THE PLAINTIFF, THE COMPLAINT HAS ALLEGED THE LIKELIHOOD OF CONTINUING HARM TO JUSTIFY SEEKING DECLARATORY AND INJUNCTIVE RELIEF. .................................................................................................................8

        A.  The Plaintiff's Use of the Panera App Constitutes a Continuing Contractual Relationship Between the Parties ..........................................8

        B.  The Likelihood of Continuing Discrimination Exists .............................9

CONCLUSION ..........................................................................................................10

## STATEMENT OF FACTS

On May 12, 2019, Daniel Anacacy, a black male of Haitian descent, placed an order for a soup and sandwich on his smartphone using the Panera app. He went to the Carle Place, Long Island Panera to retrieve his order.[1] He was wearing a durag, hoodie and sweatpants.[2] As he entered the store, a Hispanic cashier stared at him intently[3] and then followed him to the area where he was going to pick up his order.[4] The cashier then followed Mr. Anacacy to the drink station where Mr. Anacacy had a drink of water.[5] When Mr. Anacacy left the drink station, the cashier stood directly in his path and prevented him from leaving.[6] The cashier then demanded to see the Plaintiffs' food, and when Mr. Anacacy did not comply, the cashier grabbed the bag of food, which tore and fell to the floor of the restaurant in front of customers.[7]

Mr. Anacacy then had a conversation with Daniel Botta, the General Manager of the Restaurant, in which he explained what had happened.[8] Mr. Botta admitted that employees were not supposed to follow customers through the restaurant and were not supposed to demand inspection of customer receipts.[9]

Panera did not replace the food. Instead, Panera "rebagged" the food which Mr. Anacacy had picked up off of the floor of the restaurant.[10] Mr. Botta assured Mr. Anacacy that if Mr. Anacacy left the restaurant and returned, he would give Mr. Anacacy an explanation for the cashier's actions.[11]

---

[1] Complaint ¶¶ 28, 29.
[2] Id. ¶ 29.
[3] Id. ¶¶ 30-32.
[4] Id. ¶¶ 33-35.
[5] Id. ¶¶ 35-40.
[6] Id. ¶ 41.
[7] Id. ¶¶ 42-48.
[8] Id. ¶¶ 59-63.
[9] Id. ¶¶ 64-65.
[10] Id. ¶ 67.
[11] Id. ¶ 67.

When Mr. Anacacy returned several days later with his fiancé, Mr. Botta did not have an explanation. Instead, he cavalierly stated "I spoke to the kid and he said he didn't do anything wrong. I'm not sure what you want me to do about it."[12] When Mr. Anacacy's fiancé suggested that the Manager appeared to approve of his employee's treatment of "people who look like us"[13], Mr. Botta smirked, and responded that her accusation made "no sense" because the cashier was "Spanish" and "gay."[14] Daniel Botta, a white male, added that his wife was "Chinese" and that his children were "half-Chinese", so he doesn't discriminate.[15] Mr. Botta refused to discipline the employee based upon his personal belief that the incident was not racially motivated.[16]

When the Plaintiff and his fiancé insisted that Mr. Botta's actions, and the actions of his employee were disrespectful and racist, he responded "To be honest I thought we were finished with this."[17]

## ARGUMENT

### I. THE "RETAIL MERCHANDISE" RULE IS INAPPLICABLE TO THE RESTAURANT INDUSTRY

Defendants have cited numerous cases to support their position that once a sale is consummated, the there is no further duty owed to the customer. Therefore, the possibility of post-contractual violations of section 1981 are foreclosed. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 854 (8th Cir. 2001) ("The key is whether any contractual duty remained after [plaintiff] made his purchase. Once [he] paid the cashier and received [his purchase] . . ., neither party owed the other any duty under the retail-sales contract."); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 360 n.8 (5th Cir. 2003) ("In the retail context, the exchange of goods for payment occurs

---

[12] Complaint, ¶ 74.
[13] *Id.* ¶ 80.
[14] *Id.* ¶ 81.
[15] *Id.* ¶ 82.
[16] *Id.* ¶¶ 84-85.
[17] *Id.* ¶ 86.

simultaneously, and thus any contractual obligations are quite limited in duration."); *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) ("Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase"). Panera argues that Mr. Anacacy is no different than the plaintiffs in Youngblood v. Hy-Vee Food Stores, Inc.[18] and *Bishop v. Toys "R" Us-NY LLC*.[19]

However, the Defendants do not cite to a single case in which the "retail merchandise" rule was applied to a food service establishment.[20] Therefore, they have not demonstrated their entitlement to the relief they seek.

Panera asks this Court to enter unchartered territory by being the first court to extend the "retail merchandise" holdings to food service establishments.

II. **THE PLAINTIFF HAS SUFFICIENTLY PLED THAT HE WAS DENIED THE "ENJOYMENT OF ALL BENEFITS, PRIVILEGES, TERMS AND CONDITIONS OF THE CONTRACTUAL RELATIONSHIP"**

   A. **The Plaintiff is Entitled to Equal "Enjoyment of All Benefits, Privileges, Terms and Conditions" of His Contract With Panera**

Section 1981, as amended by the Civil Rights Act of 1991, prohibits racial discrimination in the performance of contracts, and guarantees equal "enjoyment of all benefits, privileges, terms and conditions of the contractual relationship" regardless of race.

Section 1981, originally passed as the Civil Rights Act of 1870, prohibited racial discrimination in the making of contracts, and was interpreted by the Supreme Court as not

---

[18] 266 F.3d 851 (8th Cir. 2001)).
[19] 414 F. Supp. 2d 385 (S.D.N.Y. 2006).
[20] *See* Defendants'' Memorandum of Law, citing exclusively to cases involving retail merchandise stores (*Bishop*, 414 F. Supp. 2d 385, *Arguello*, 330 F.3d 355, *Youngblood*, 266 F.3d 851, *Drayton v. Toys 'R' Us Inc.*, 645 F. Supp. 2d 149 (S.D.N.Y. 2009), *Bishop v. Best Buy, Co.*, No. 08 Civ. 8427 (LBS), 2010 WL 4159566 (S.D.N.Y. Oct. 13, 2010), and *Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541 (NRB), 2009 WL 3762119 (S.D.N.Y. Nov. 9, 2009).

prohibiting discrimination which occurred after the formation of the contract. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989).

Congress reacted swiftly to the *Patterson* decision by passing the Civil Rights Act of 1991, which amended § 1981 by adding subsection (b). Subsection (b) defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts and the *enjoyment of all benefits, privileges, terms and conditions of the contractual relationship*." Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071 (codified at 42 U.S.C. § 1981(b)) (emphasis supplied).

One of the remedial purposes of the Civil Rights Act of 1991 was to prohibit discrimination which occurred after the formation of the contract. See Pub. L. No. 102-166, 105 Stat. 1071; see also H. R. Rep. No. 102-40(II), at 2 (1991) (stating that one of the purposes of the Civil Rights Act of 1991 was to "respond to recent Supreme Court decisions by restoring the civil rights protections that were dramatically limited by those decisions").

## B. Food Service and Hospitality Industry Cases Are "Easily Distinguishable"[21] From "Retail Merchandise" Cases

After the passage of the Civil Rights Act of 1991, "[t]he scope of protection under § 1981 includes all contractual rights throughout the course of formation, performance and termination of a contract." *Clark v. City of N.Y.*, No. 13-cv-210 (ENV) (MDG), 2014 U.S. Dist. LEXIS 136363, at *9 (E.D.N.Y. Sept. 19, 2014). As pointed out by the Eighth Circuit in *Youngblood*, 266 F.3d at 854, the key to the resolution of the retail merchandise cases is that no contractual duty remains after the plaintiff makes his purchase. "In the retail context, the exchange of goods for payment occurs simultaneously, and thus any contractual obligations are quite limited in duration." *Arguello*, 330 F.3d at 360 n.8

---

[21] *Arguello*, 330 F.3d at 360-61.

4

Food service cases are "easily distinguishable", "because dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Id.* at 360-61.

  C. **Mr. Anacacy has sufficiently pled facts showing that he was deprived of the benefits of his contract with Panera.**

    1. **Mr. Anacacy alleges facts which can easily be understood to constitute a deprivation of the full benefits of his contract with Panera.**

Panera claims that Mr. Anacacy does not "allege anywhere in his Complaint that he was denied any contractual right ancillary to his food purchase, except for potentially the ability to leave the Café."[22] That is simply not the case.

The right to retrieve food already purchased online without being pursued and surveilled, the right to drink a cup of water, the right to not be confronted and assaulted while in the restaurant, the right to not eat food which has been on the restaurant floor, and the right to receive a fresh sandwich and new hot soup once it is brought to the manager's attention that the food was on the floor of the restaurant can all be easily understood as "benefits" of the contract between Mr. Anacacy and Panera.

Of critical importance in this case is that Mr. Anacacy had the right to eat his meal undisturbed in the restaurant if he chose to. The interference with that right (regardless of whether he exercised that right), is a clear violation of the terms and conditions of his contract with Panera.

Furthermore, the argument that the contract was complete once the food was purchased simply makes no sense. If the contract was complete when the purchase was made, that means that Mr. Anacacy did not have the contractual right to pick up his food. If he had the contractual right to pick up his food, did he not also have the right to either eat the food at the restaurant or

---

[22] Defendants' Memorandum of Law, at 7, ¶ 2.

leave the restaurant with the food? If he did not, then Panera is saying that its customers have the right to purchase food, but not eat the food.

### 2. Panera broke its promises of good customer service to Mr. Anacacy

Mr. Botta created a continuing duty to Mr. Anacacy by asking Mr. Anacacy to return to the restaurant, at which time Mr. Botta would have an answer for the John Doe employee's actions. Mr. Botta broke that promise by not having an explanation for the incident. Panera's website states, "it's our job to provide our customers with deliciously fresh, handcrafted food in a welcoming and comfortable environment"[23] and promises "a warm, welcoming environment, [staffed] by people who care."[24] Panera broke that promise as well.

### 3. By serving Mr. Anacacy food that had been on the floor of the restaurant, Panera violated the terms of its contractual relationship with Mr. Anacacy and violated the New York Sanitary Code.

For the purposes of this motion, it is undisputed that John Doe employee tore the bag holding Mr. Anacacy's food, causing the food to fall to the floor. It is also undisputed for the purpose of this motion that Panera, rather than preparing new food, simply "re-bagged" the food that had fallen to the floor and served it to Mr. Anacacy for consumption. This constitutes a violation of the U.C.C. and the New York State Sanitary Code.

> N.Y. U.C.C. Law § 2-314 states:
>
> (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as [. . .]
>
> (c) are fit for the ordinary purposes for which such goods are used; and [. . .]
>
> (e) are adequately contained, packaged, and labeled as the <u>agreement</u> may require[.]

---

[23] https://www.panerabread.com/en-us/articles/you-speak-we-listen.html (last visited May 22, 2020).
[24] https://www.panerabread.com/en-us/company/about-panera.html (last visited May 22, 2020).

For more than 100 years, New York has recognized an implied warranty accompanying all sales by a dealer of food articles for immediate use, that the food is fit for human consumption. *Race v. Krum*, 222 N.Y. 410, 118 N.E. 853 (1918); *Rinaldi v. Mohican Co.*, 225 N.Y. 70, 121 N.E. 471 (1918). Panera breached this warranty.

What made the food unfit for human consumption? Besides common sense, the answer lies in the New York Sanitary Code, which states, inter alia,

> "Food is to be protected from contamination during storage, preparation, display, service and transportation." 10 NYCRR § 14-1.40(a).

> "Containers of food are to be stored a minimum of six inches [. . .] above the floor to protect the food from [. . .] contamination." 10 NYCRR § 14-1.43(a).

> "Food removed from the original container or package is to be protected from contamination by storing in clean, covered, sanitized containers[. . .]" 10 NYCRR § 14-1.42.

> "All food [. . .] is to be handled and vended in a sanitary manner." 10 NYCRR § 14-5.44.

In short, the Plaintiff has alleged facts that Panera engaged in behavior that is a violation of the New York Sanitary Code, and delivered food to him that was unfit for human consumption, thereby violating the terms of the sales contract with him.

### III. DEFENDANTS' REQUEST IS A SUMMARY JUDGMENT MOTION IN DISGUISE, AND THEREFORE SHOULD BE DENIED.

The Defendants' Request that the Court make factual determinations regarding the contractual duties of the parties should be denied. In order to determine whether the plaintiff "enjoy[ed] all [of] the benefits, privileges, terms and conditions of the contractual relationship", the court first must determine the terms, conditions and duration of the contractual relationship between the parties.

In the retail merchandise context, the contract is simple and "once the purchase is completed, no contractual relationship remains." *Udofot v. Seven Eights Liquor*, No. A10-431, 10 (Minn. Ct. App. Dec. 14, 2010).

However, no caselaw has previously defined the nature of the contractual duties and benefits of the parties under the facts presented in this case. Therefore, the Defendants' request is essentially one for summary judgment determining the nature of the contractual relationship between the parties. Such "disputes over contracts outside the pleadings are 'not appropriately resolved on a 12(b)(6) motion.'" *Clark*, 2014 U.S. Dist. LEXIS 136363, at *11 (quoting *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662-63 (2d Cir. 1996)).

IV.  **DRAWING ALL INFERENCES IN FAVOR OF THE PLAINTIFF, THE COMPLAINT HAS ALLEGED THE LIKELIHOOD OF CONTINUING HARM TO JUSTIFY SEEKING DECLARATORY AND INJUNCTIVE RELIEF.**

Defendants claim that the Plaintiff is not entitled to injunctive relief, because "[e]xcept for the one instance where he alleges to have gone to the café with his fiancé to confront the manager, Plaintiff does not allege that he ever returned to the café to purchase food, or that he has any plans to do so in the future." In other words, if Mr. Anacacy was discriminated against on the basis of his race, the solution is simple - "Don't come back."

A.  **The Plaintiff's Use of the Panera App Constitutes a Continuing Contractual Relationship Between the Parties**

The use of the Panera App constitutes a continuing contractual relationship between the parties whereby each receives a benefit. The Plaintiff still has the Panera App on his phone. The Carle Place Panera is close to his home.

The Plaintiff receives "rewards" which are tied to the use of the App. (See "Terms of Use", available at https://www.panerabread.com/en-us/company-information/terms-of-use.html, (last visited May 22, 2020). Each time the user places an order with the App, the user earns rewards,

8

which include promotions and free food. *Id.* Panera receives benefits from the use of the app including increased sales. Panera also collects information from users who have downloaded the app, including geolocation information, which is used by Panera "to provide personalized messaging or content and/or for marketing purposes by email, push notifications, online or in-app advertising or otherwise." *Id.*

### B. The Likelihood of Continuing Discrimination Exists

The General Manager of the Carle Place Panera, who is presumably charged with the obligation to oversee compliance with anti-discrimination laws at the Carle Place location, believes that people who have been historically discriminated against cannot discriminate against other protected groups. For example, he told Mr. Anacacy that the idea that he was profiled by the cashier made no sense because the cashier was a gay Hispanic.

The General Manager also believes that someone who does not discriminate against one racial group is free from discrimination against all other groups. For example, the General Manager told the Plaintiff that he does not discriminate, because he is married to a Chinese woman and his children are "half Chinese."

Upon information and belief, the General Manager is still employed at the Carle Place Panera as is the John Doe cashier. The General Manager's statements indicate that he is blind to his own prejudices and to the potential prejudices of his subordinates. These statements reveal the General Manager's belief that unconscious bias simply does not exist. The statements also suggest a complete lack of adequate training by Panera.

Finally, there has been no indication by Panera that it has taken any corrective measures.

Under these circumstances, the Defendant's solution for black customers who experience discrimination – namely, "don't come back" – is inadequate.

## CONCLUSION

If the Court believes that further facts are missing from the complaint, which, if contained therein would establish a plausible claim for relief, the Plaintiff requests leave to amend the complaint. For the reasons set forth above, the Plaintiff requests that Panera's motion be denied in its entirety.

Dated: Huntington, New York
      May 22, 2020

                                    Respectfully submitted,
                                    MOSER LAW FIRM, P.C.
                                    5 East Main Street
                                    Huntington, New York 11743
                                    (516) 671-1150

                                By:_____
                                   Steven J. Moser