UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL ANACACY,<br><br>        Plaintiff,<br><br>    v.<br><br>PANERA, LLC, DOHERTY ENTERPRISES, INC., DOHERTY BREADS, LLC and JOHN DOE,<br><br>        Defendants. | Case No. 2:19-cv-07126-ENV-RLM |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Dated and Served: June 3, 2020

SAUL EWING ARNSTEIN & LEHR, LLP

Dena B. Calo, Esquire
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7104
Dena.Calo@saul.com

Erik P. Pramschufer, Esquire
1270 Avenue of the Americas, Suite 2005
New York, NY 10020
(212) 980-7216
Erik.Pramschufer@saul.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

    I.    PLAINTIFF DOES NOT ALLEGE ANY INTERFERENCE WITH HIS RIGHT TO "MAKE AND ENFORCE" CONTRACTS. ........................................................ 4

        A.    There is no such thing as the "Retail Merchandise Rule," as Section 1981 applies equally to the restaurant and other service industries. ..................................... 5

        B.    Plaintiff does not allege any facts suggesting any interference with his right to "make and enforce contracts." ............................................................................ 7

    II.    THE COURT SHOULD DISREGARD ANY ARGUMENTS CONCERNING THE PANERA APP. ....................................................................................................... 11

        A.    Plaintiff's use of the Panera App is insufficient to establish a continuing contractual relationship for the purpose of invoking Section 1981. ............................... 12

        B.    Plaintiff's continuing use of the Panera Bread App does not demonstrate a sufficient threat of repeated injury. .................................................................................. 12

    III.    PLAINTIFF'S COMPLAINT DOES NOT ALLEGE A SUFFICIENT LIKLIHOOD OF REPEATED INJURY TO SEEK PROSPECTIVE EQUITABLE RELIEF. ................. 13

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*All-City Metal, Inc. v. Sheet Metal Workers Local 28*, No. 18-CV-958-RRM-SJB,
 2020 WL 1502049 (E.D.N.Y. Feb. 18, 2020) ................................................................. 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 13

*Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006), *aff'd sub
 nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010) ............................... 5, 9, 10, 12

*Childs v. Boyd Gaming Corp.*, No. 2:18-cv-00316-GMN-VCF, 2018 WL 4333945
 (D. Nev. Sept. 11, 2018) ................................................................................................. 6

*Clark v. City of New York*, No. 13-cv-210-ENV-MDG, 2014 WL 4804237
 (E.D.N.Y. Sept. 25, 2014) ............................................................................................ 6, 7

*Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002) ........................................................ 8

*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) ................................................. 8

*Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) .......................... 8

*Hayden v. Cnty. of Nassau*, 180 F.3d 42 (2d Cir. 1999) ................................................ 11

*Henry v. Lucky Strike Entm't, LLC*, No. 10-CV-03682-RRM-MDG, 2013 WL
 4710488 (E.D.N.Y. Sept. 01, 2013) ............................................................................... 6

*Jacobson v. Schwarzenegger*, 357 F. Supp.2d 1198 (C.D. Cal. 2004) ............................ 4

*James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297 (E.D.N.Y. 2017) ............................... 13

*McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp. 2d 1043 (N.D. Ill. 1998) ....................... 9

*Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996) ............................................... 12

*O'Brien v. Natl. Prop. Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) ............... 3

*Perry v. Burger King Corp.*, 924 F. Supp. 548 (S.D.N.Y. 1996) ............................. 4, 5, 9

*Pungitore v. Barbera*, 506 Fed.Appx. 40 (2d Cir. 2012) .............................................. 14

*Robertson v. Burger King, Inc.*, 848 F. Supp. 78 (E.D. La. 1994) .................................. 6

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) .............................................................. 14

*Thomas v. City of New York*, No. 12-CV-5061-FB-SMG, 2013 WL 3810217
 (E.D.N.Y. July 23, 2013) ................................................................................................ 3

*Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001), *cert. denied,* 122 S. Ct. 1606 (2002) ................................................................. 5, 9, 10

**FEDERAL STATUTES AND RULES**

42 U.S.C. § 1981 ............................................................................................. passim

Civil Rights Act of 1964 Title II, 42 U.S.C. § 2000a ........................................ 13, 14

Fed. R. Civ. P. 12 ................................................................................................ 8, 14

Fed. R. Civ. P. 56 ...................................................................................................... 8

**PRELIMINARY STATEMENT**

Defendants Panera, LLC, The Doherty Group, Inc. d/b/a Doherty Enterprises (incorrectly captioned as "Doherty Enterprises, Inc."), Doherty Breads, LLC (collectively, the "Entity-Defendants")[1] and John Doe (collectively, with the Entity-Defendants, "Defendants"), by and through their attorneys, hereby submit this Reply Memorandum of Law in further support of their Motion to Dismiss Plaintiff Daniel Anacacy's Complaint (ECF No. 1, hereafter the "Complaint" or "Compl."), and in reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint (the "Opposition" or "Opp."). Plaintiff's Opposition is unavailing for multiple reasons, and presents no valid argument for why the Defendants' Motion should be denied.

**First**, Plaintiff's arguments inventing the term "Retail Merchandise Rule," and arguing that Defendants are asking this Court to enter "uncharted territory" by applying this "Rule" to the service industry, are misplaced. Courts throughout the country are often tasked to analyze 42 U.S.C. §1981 ("Section 1981") claims against restaurants, hotels, casinos and night clubs, and the result that Defendants seek here is consistent with those cases. More tellingly, though, the Opposition does not articulate *how* or *why* the asserted "retail merchandise" cases cited in

---

[1] Plaintiff's Opposition makes no effort to distinguish between the Entity-Defendants, and instead simply refers to a singular business called "Panera." There is no entity called "Panera." Panera, LLC is a franchisor which *inter alia* licenses the trade name "Panera" to be used by franchisees. In this instance, Doherty Breads, LLC is the franchisee which operates the Panera Bread bakery café in Carle Place, New York that Plaintiff visited (the "Café"). The Doherty Group, Inc. d/b/a/ Doherty Enterprises is a management company which *inter alia* oversees human resources and customer relations for various affiliate entities, including Doherty Breads, LLC. If this matter proceeds into discovery each of the Entity-Defendants may assert specific fact-based defenses based upon their respective relationship to Plaintiff and the Café. In the Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Opening Memo"), and this Reply, the Entity-Defendants' refer to themselves as collectively operating the Café because that is what Plaintiff alleges. Compl., ¶12. This is done without waiver as to any Defendant's ability to raise any contrary fact-based defenses at a later time -- including any defense based upon the fact that Panera, LLC has absolutely no control over the actions of franchisees' employees.

Plaintiff's Opening Memo are distinguishable from the case at hand. This is because no distinction exists.

**Second**, Plaintiff's Opposition still fails to identify any benefit of his contractual relationship with the Entity-Defendants that was legitimately infringed. Plaintiff's Complaint clearly and unambiguously alleges that Plaintiff had completed his food purchase, and was attempting to leave the Café when Doe stopped him to demand his receipt. Compl., ¶¶28, 41. This fact is dispositive and closes the door to Plaintiff's Section 1981 claim. The Opposition's argument that Plaintiff was denied the right to eat at the Café undisturbed had he wanted to do so is entirely hypothetical. The Court need not, and should not, engage in an academic exercise to determine whether Section 1981 may have been violated had Plaintiff chosen to eat his food at the Café. By his own Complaint allegations, Plaintiff was leaving the Café and had no intentions of eating there.

**Finally**, Plaintiff's argument that the Complaint adequately alleges a threat of continued harm relies upon matters which are outside the pleadings; particularly, the argument that Plaintiff's use of the Panera Bread Mobile App (the "App") constitutes a continuing contractual relationship between Plaintiff and the Entity-Defendants. Even if this argument is considered, the Opposition fails to articulate how Plaintiff's rights under the App's terms of use have been infringed, or how his continued use of the App demonstrates a sufficient likelihood of repeated injury. Any threat of any repeated injury is purely speculative based upon Plaintiff's own subjective conclusions/assumptions about Daniel Botta[2] and John Doe. Plaintiff comments that the Entity-Defendants propose a solution for African American customers to "don't come back."

---

[2] Daniel Botta was the manager of the Café that discussed with Plaintiff the interaction Plaintiff had with Defendant Doe both after the interaction occurred, and again a week later when Plaintiff returned to the Café to inquire whether any corrective steps were taken. Compl., ¶¶58-67, 74-86.

2

Opp. pp. 8, 9. However this comment loses its efficacy when considering that Plaintiff's own conclusions are the only basis upon which he argues he will be discriminated against in the future. The threat of repeated injury boils down to Plaintiff's accusation that: "this happened to me in the past, and I think it may happen again." However, the law is clear that this is an insufficient basis to initiate a claim for prospective injunctive relief.

For these reasons, and as further described below, the Defendants' Motion should be granted and this case should be dismissed.[3]

## STANDARD OF REVIEW

Defendants describe the applicable the standard of review in their Opening Memo, which Plaintiff does not dispute in his Opposition. However, in light of the Opposition seeking to raise numerous matters outside of Plaintiff's pleading, and further concluding with a vague request that Plaintiff be able to amend his complaint to the extent that the Court finds his allegations deficient, a short supplement is warranted.

"[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," and courts should disregard factual matters raised for the first time in an opposition brief. *O'Brien v. Natl. Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); *Thomas v. City of New York*, No. 12-CV-5061-FB-SMG, 2013 WL 3810217 at *3 (E.D.N.Y. July 23, 2013). However, even if not considered in the motion, matters raised for the

---

[3] Notably absent from the Opposition are any counterarguments concerning the following subjects:

- Doe's argument that the pendent state tort claims against him should be dismissed for lack of subject-matter jurisdiction to the extent that the federal claims against the Entity-Defendants are disposed of; and

- The Entity-Defendant's argument that Plaintiff's claims for declaratory relief aimed at past-conduct are impermissible.

Accordingly, these subjects are not discussed further herein, and the Defendants respectfully request that the Court grant their Motion to Dismiss on those aspects for the reasons set out in Defendants' Opening Memo.

first time in an opposition brief are probative as to whether the plaintiff should be allowed to amend his complaint. *See All-City Metal, Inc. v. Sheet Metal Workers Local 28*, No. 18-CV-958-RRM-SJB, 2020 WL 1502049 at* 8 (E.D.N.Y. Feb. 18, 2020); *Jacobson v. Schwarzenegger*, 357 F. Supp.2d 1198, 1204 (C.D. Cal. 2004) (citing *Broam v. Bogan,* 320 F.3d 1023, 1026 n. 2 (9th Cir. 2003)).

Here, Plaintiff raises multiple new factual allegations in his Opposition that should unquestionably be disregarded during the Court's determination of the Defendants' Motion. However, these new allegations nevertheless demonstrate that no amendment can cure the deficiencies in Plaintiff's Complaint, and therefore the Court's dismissal should be with prejudice.

## **ARGUMENT**

### I. PLAINTIFF DOES NOT ALLEGE ANY INTERFERENCE WITH HIS RIGHT TO "MAKE AND ENFORCE" CONTRACTS.

Plaintiff's Opposition raises several conclusory arguments for why the Motion should be denied, and attempts to distinguish several of the cases cited in Defendants' Opening Memo. However, Plaintiff does not cite to a single case supporting his own theory of liability. In fact, Plaintiff does not even analyze *Perry v. Burger King Corp.*, 924 F. Supp. 548 (S.D.N.Y. 1996), which the Defendants acknowledge in their Opening Memo as an oft-cited decision in this space that Defendants need to distinguish. Instead, Plaintiff confusingly cites to the U.C.C. and the N.Y. Sanitary Code and argues that the Entity-Defendants violated their food-sales contract with Plaintiff by re-bagging his food after it had been on the floor.

Like the rest of Plaintiff's arguments, however, Plaintiff does not identify how this theory supports the conclusion that the Defendants unlawfully discriminated against him and interfered

4

with his equal right to "make and enforce contracts," as this alleged event occurred after the contractual relationship ended. Accordingly, Plaintiff's Section 1981 claim should be dismissed.

> A. There is no such thing as the "Retail Merchandise Rule," as Section 1981 applies equally to the restaurant and other service industries.

Defendants acknowledge in their Opening Memo that many of the cases they rely upon -- including *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006), *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010) (hereafter "*Bishop v. Toys "R" Us*") and *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001), *cert. denied,* 122 S. Ct. 1606 (2002)-- concern plaintiffs who purchased consumer merchandise. *See* Opening Memo, p. 8. Defendants argue that the difference between the retail merchandise setting and the facts alleged in the Complaint is immaterial. This is because unlike in *Perry* (and similar "restaurant cases"), Plaintiff does not allege here that he was deprived of any right ancillary to his food purchase. This is self-evident from the fact Plaintiff was leaving with his to-go order at the time Doe asked him for a receipt. *See* Compl., ¶41. To counter this point Plaintiff only states that "restaurant cases" such as his are distinguishable "'because dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased.'" *See* Opp., p. 5 (quoting *Arguello v. Conoco, Inc.*, 330 F.3d 355, 360-61 (5th Cir. 2003)).

However, Plaintiff does not argue *how* or *why* his specific case is distinguishable from *Bishop v. Toys "R" Us*, *Youngblood*, and the like. That is because the only distinction is the physical setting. The cases cited in Defendants' Opening Memo are particularly relevant to the case at hand because their facts are strikingly similar. However, the initial failure to cite any cases applying Section 1981 to the service industry does not mean that Defendants are asking the Court to enter "uncharted waters." To the contrary, courts are often tasked to apply Section 1981

to the service industry and the result that the Entity-Defendants seek here does not "extend" any rule not previously embraced by other courts. *See, e.g.*, *Childs v. Boyd Gaming Corp.*, No. 2:18-cv-00316-GMN-VCF, 2018 WL 4333945 at *4-5 (D. Nev. Sept. 11, 2018) (dismissing a Section 1981 claim against a casino where the plaintiff alleged *inter alia* that the venue provided him "poor service and disturbing atmosphere" on account of his race, after the court noted that "[i]n the context of **service and retail establishments**, courts have declined to find § 1981 violations where the plaintiffs were 'denied neither admittance nor service, nor were they asked to leave.'") (quoting *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996)) (emphasis added); *Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 81 (E.D. La. 1994) (dismissing a Section 1981 claim premised upon plaintiff allegedly having to wait for his food longer than similarly situated white patrons, as the plaintiff did not allege that he was "denied admittance or service – his service was merely slow."); *Henry v. Lucky Strike Entm't, LLC*, No. 10-CV-03682-RRM-MDG, 2013 WL 4710488 at *11-13 (E.D.N.Y. Sept. 01, 2013) (finding *inter alia* that guests who were admitted into a bowling alley could not assert their own Section 1981 claims premised upon one of the people in their party being denied entry, as the admitted guests never sought out any service from the bowling alley that was denied so as to implicate the protections of Section 1981).

In fact, Your Honor's own decision in *Clark v. City of New York*, No. 13-cv-210-ENV-MDG, 2014 WL 4804237 (E.D.N.Y. Sept. 25, 2014) applies Plaintiff's so-called "Retail Merchandise Rule" to the hotel industry. The central issue applying Section 1981 to that case was whether the plaintiff who purchased a hotel room for her father could assert that she and the hotel had a continuing contractual relationship despite the fact that she was not a registered occupant of the room. The Court declined to dismiss the case at the pleading stage after drawing

all inferences in the plaintiff's favor, but notably found that the denial was "without prejudice to Best Western's right to establish, after discovery, that these alleged acts of discrimination came after the contractual relationship had terminated, that is, went beyond her contractual rights and activities with Best Western." *Id.* at *4.

The *Clark* decision stands in contrast to the proposition that Plaintiff argues -- that Section 1981 is inherently "different" when applied outside of the retail merchandise space so as to *ipso facto* distinguish the retail cases cited in the Opening Memo. Unlike in *Clark*, here discovery is not necessary before the Court can determine that the contractual relationship between the Entity-Defendants and Plaintiff had terminated at the time the alleged acts of discrimination occurred. While the contractual rights of restaurant-patrons and retail-purchasers may differ, potentially impacting the Section 1981 analysis in each respective setting, the cases cited in Defendants' Opening Memo dismissing claims with **virtually the exact same facts that Plaintiff alleges here** are indistinguishable, and this case should similarly be dismissed.

**B.     Plaintiff does not allege any facts suggesting any interference with his right to "make and enforce contracts."**

The crux of Defendants' Motion comes down to whether Plaintiff has alleged any legitimate interference with his equal right to "make and enforce contracts." There are two time periods relevant to this analysis: (1) before Plaintiff decided to leave the Café, and (2) after Plaintiff decided to leave the Café. The moment Plaintiff decided to leave the Café is an important dividing-line because this was the moment when Plaintiff unilaterally decided not to avail himself of any additional contractual benefit potentially intertwined with his to-go order. At this moment the contractual relationship between him and the Entity-Defendants ceased, and the events that followed cannot be found to have violated Plaintiff's rights under Section 1981.

7

### 1. *Plaintiff's allegation that he was surveilled by Doe is insufficient to state a claim under Section 1981.*

Plaintiff's Opposition alleges that the following benefits of his contractual relationship with the Entity-Defendants were infringed prior to being "assaulted" by Doe: (i) "[t]he right to retrieve food already purchased online without being pursued and surveilled, [and (ii)] the right to drink a cup of water." Opp., p. 5. However, both of these allegations are insufficient to give rise to a legitimate claim under Section 1981.

Courts have repeatedly noted that surveillance by itself is not actionable under Section 1981. *Garrett v. Tandy Corp.*, 295 F.3d 94, 101 (1st Cir. 2002) ("In a society in which shoplifting and vandalism are rife, merchants have a legitimate interest in observing customers' movements."); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1108 (10th Cir. 2001); *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 471 (8th Cir. 2009). Prior to the time when Plaintiff decided to leave the Café, he alleges nothing more than the fact that the cashier (Doe) watched him while he picked up his to-go order and while he got a cup of water from the drink station.[4] Compl., ¶¶32-40. This is insufficient as a matter of law to serve as the foundation for a Section 1981 claim. Furthermore, Plaintiff does not allege anywhere in his Complaint that his ability to pick up his to-go order, or his ability to get a cup of water, were tangibly infringed. Accordingly, Plaintiff does not plead a viable cause of action under Section 1981 for any events that transpired prior to the time he decided to leave the Café.

---

[4] As discussed in Defendants' Opening Memo, the events that transpired on May 12, 2019 all stemmed from the fact Doe saw Plaintiff filling up a large cup of soda at the drink station, which Doe knew was not included in Plaintiff's to-go order. If this matter proceeds into discovery, these facts will be the foundation for Defendants' ultimate Fed. R. Civ. P. 56. motion. However, because these matters are outside of Plaintiff's Complaint, it is premature for the Court to consider these facts on the Defendants' Fed. R. Civ. P. 12 motion.

### 2. The alleged events that transpired after Plaintiff decided to leave the Café fall outside of the scope of Section 1981.

The foundation of Plaintiff's claim is his allegation that when he tried to leave the Café with his food Doe demanded his receipt, grabbed his food, and did not let him leave. For why this interaction is not actionable under Section 1981 the Entity-Defendants point to several cases, including *Bishop v. Toys "R" Us* and *Youngblood*, which dismissed claims alleging virtually the exact same facts that Plaintiff does here (*i.e.*, where the plaintiff was detained and/or questioned for a receipt after completing his purchase and trying to leave the store). In those cases the courts found that the contractual relationship terminated once the goods were purchased, so that any events that transpired afterward could not have infringed upon the plaintiff's Section 1981 rights. *See Bishop v. Toys "R" Us*, F. Supp. at 392-393; *Youngblood*, 266 F.3d at 854.

Plaintiff's Opposition misconstrues the Entity-Defendants' Opening Memo and states that the Entity-Defendants argue their contractual relationship with the Plaintiff ended at the moment Plaintiff purchased his food. That is not what the Entity-Defendants argue. Plaintiff's contract to purchase food to-go surely included Plaintiff's right to pick up his food, the right to use the restroom, and likely also included the right to get a cup of water from the drink station. As the Defendants acknowledge in their Opening Memo, under *Perry* if Plaintiff was denied any additional benefit intertwined with his food-purchase contract, he may be able to articulate a claim under Section 1981. *See* Opening Memo, p. 9, fn. 4 (discussing Plaintiff's reference to his filling up a cup of water as a potential ancillary benefit of his contract). Hypothetically, if Plaintiff *had* chosen to eat his food at the Café and was allegedly harassed while he was sitting eating his food, he also may have been able to argue that his Section 1981 rights were infringed. *See, e.g.*, *McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp. 2d 1043, 1048 (N.D. Ill. 1998) ("Here, defendant failed to provide plaintiffs the full benefits of the contract in that they failed to provide

them with the proper utensils with which to eat their pizza and created a disturbing atmosphere in which to eat.").

However, Plaintiff simply does not allege that any of these things happened here. At the very most, Plaintiff can only argue that his contractual relationship with the Entity-Defendants extended until the moment he chose not to take advantage of any additional benefits of his contracted-for food order (*i.e.*, the moment when he decided to leave the Café). At that point the Entity-Defendants had performed the full extent of their contractual duties under Plaintiff's to-go order, and Plaintiff had no intention to modify his initial contract, or enter into any subsequent implied or express contracts. He intended to leave.

To argue that the contractual relationship extended any further than that moment would be inconsistent with *Bishop v. Toys R Us*, *Youngblood*, and the other cases that have applied these decisions through the years. If Plaintiff's contractual rights extended beyond that point, then why would that logic not apply to the plaintiff in *Youngblood* having the contractual right to leave the store with the can of jerky he purchased? Or to the plaintiff in *Bishop v. Toys "R" Us* having the contractual right to leave the store with the doll set he bought? These questions demonstrate that the result Plaintiff seeks is entirely irreconcilable with those decisions.

Neither Plaintiff's Complaint nor his Opposition make any attempt to frame the parameters of his contractual relationship with the Entity-Defendants. In fact, Plaintiff insinuates a virtually perpetual contractual relationship between him and the Entity-Defendants by virtue of the customer-relations information posted on Panera's website, and Plaintiff's use of the App. These facts are not properly considered as part of this Motion, but nevertheless do not provide Plaintiff a legitimate argument to avoid the result that the law requires. *See infra*, Section II.

Plaintiff and the Entity-Defendants may have entered into multiple contracts if Plaintiff frequently eats at the Café, but the only relevant contract that Plaintiff claims to have been interfered with was his food purchase on May 12, 2019. This included more than the ability to purchase food; but under no construction could it have existed indefinitely as Plaintiff argues. Rather, this contractual relationship continued until the moment Plaintiff made the decision to not take advantage of any ancillary benefits and leave the Café. Because the only potentially-actionable conduct occurred after this point, it falls outside of the purview of Section 1981, and is not a legitimate foundation for Plaintiff to raise this suit.

## II. THE COURT SHOULD DISREGARD ANY ARGUMENTS CONCERNING THE PANERA APP.

Plaintiff argues in the section of his Opposition addressing his claims for injunctive relief that his use of the App constitutes a continuing contractual relationship with the Entity-Defendants. Putting aside the foundational aspect that this case involves three separate entities -- (1) a franchisor, (2) a franchisee, and (3) the franchisee's management company-- all of which have different rights and responsibilities with respect to the App and its terms of use, this argument should not be considered because it relies upon facts which are raised for the first time in Plaintiff's Opposition. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.")

However, notwithstanding this dispositive defect, Defendants discuss these allegations because they are unpersuasive, and demonstrate that Plaintiff's Complaint is not capable of being easily cured by simply referencing the App in an amended complaint.

### A. Plaintiff's use of the Panera App is insufficient to establish a continuing contractual relationship for the purpose of invoking Section 1981.

Plaintiff's Opposition states that "[t]he use of the Panera App constitutes a continuing contractual relationship between the parties whereby each receives a benefit," and then cites to the terms of use found on Panera's website describing Panera's loyalty rewards program. Assuming, *arguendo*, that Panera's loyalty rewards program does constitute a continuing contractual relationship between Plaintiff and any of the Entity-Defendants, Plaintiff does not discuss at all how *this* contractual relationship was infringed so as to implicate Section 1981.

It is fundamental that "[a] claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Morris*, 89 F.3d at 414-15 (citation omitted). In *Bishop v. Toys "R" Us* the court disapproved of a similar argument that the store's return policy provided a basis upon which the contractual relationship "window" could be expanded to include actions occurring after the initial sales contract. *Bishop v. Toys "R" Us*, 414 F. Supp. 2d at 393 (citing *Garrett*, 295 F.3d at 102). Like in *Bishop v. Toys "R" Us*, Plaintiff attempts to expand the scope of Section 1981 to every interaction between Plaintiff and the Entity-Defendants subsequent to the performance of the relevant contract. However, Plaintiff does not argue that he is prevented from earning or redeeming rewards, and similarly does not allege that his use of the App has been impaired by the events that transpired on May 12, 2019. Accordingly, Plaintiff's arguments concerning the App as a basis upon which to expand the scope of Section 1981 should be disregarded.

### B. Plaintiff's continuing use of the Panera Bread App does not demonstrate a sufficient threat of repeated injury.

Plaintiff does not articulate *how* Plaintiff still having the App on his phone demonstrates a likelihood of repeated injury, but he assumingly raises this fact in an effort to demonstrate that

he intends to patronize the Café in the future. However, the fact that Plaintiff may patronize the Café again in the future is an insufficient basis to establish standing for the broad sweeping injunctive relief that Plaintiff seeks here. Plaintiff does not plausibly allege any facts demonstrating a policy, pattern or practice of discrimination upon which he can conceivably rest a claim for injunctive relief based upon his general intent to patronize the Café at some point in the future. *See James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 306 (E.D.N.Y. 2017); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (a plaintiff's claim must be premised upon plausible factual allegations). Accordingly, because the facts that are pled do not demonstrate any sufficient threat of imminent harm, Plaintiff lacks standing to seek injunctive relief notwithstanding the fact he still has the App on his phone, and may intend to patronize the Café at some point in the future.

### III. PLAINTIFF'S COMPLAINT DOES NOT ALLEGE A SUFFICIENT LIKLIHOOD OF REPEATED INJURY TO SEEK PROSPECTIVE EQUITABLE RELIEF.

The Entity-Defendants move to dismiss Plaintiff's claims under Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a ("Title II") because the exclusive remedy for a violation of Title II is injunctive relief, and Plaintiff does not have constitutional standing to seek such relief. *See* Opening Memo, p. 10-13. The Second Circuit summarized the standing requirement for a plaintiff to state a claim for prospective injunctive in a discrimination case, as follows:

> Standing requires, *inter alia*, that the plaintiff show an "actual or imminent" injury in fact, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted), and when seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Although past wrongs may serve as "evidence bearing on "whether there is a real and immediate threat of repeated injury,'" such evidence "'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'"

> *Id.* at 102, 103 S.Ct. 1660 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

*Pungitore v. Barbera*, 506 Fed.Appx. 40, 42 (2d Cir. 2012); *see also Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("In [seeking to establish standing], he 'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he ... will be injured in the future.'") (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

Plaintiff's claim for injunctive relief rests upon one alleged incident of discrimination, coupled with several of Plaintiff's own conclusions about Daniel Botta.[5] These accusations do not demonstrate any "adverse effect" so as to allow Plaintiff to assert a claim for injunctive relief based upon one incident of alleged wrongdoing. Accordingly, Plaintiff lacks standing to seek the injunctive relief that he seeks, and his claims for injunctive relief should be dismissed.[6]

## CONCLUSION

The Entity-Defendants argue in their Opening Memo that Plaintiff's Section 1981 claim should be dismissed, and cite to a string of cases where various federal courts dismissed claims based upon virtually the exact same facts that Plaintiff alleges here. In countering this, Plaintiff's Opposition is unpersuasive and attempts to raise matters which are outside of his own pleading in an effort to save his claim. The deficiencies in Plaintiff's Complaint are his own doing. Most significantly, his allegation that he was confronted by Doe when he was leaving the Café. This defect is incapable of being cured via an amendment, unless Plaintiff were to entirely change his

---

[5] Plaintiff also notes in his Opposition that "there has been no indication by [the Entity-Defendants] that [they] ha[ve] taken any corrective measures." This "throw away" argument is circular. It is Plaintiff's burden to allege sufficient facts in order to survive a Fed R. Civ. P. 12 motion. Defendants have no burden at this juncture to allege any facts concerning the actions they took in response to Plaintiff's complaint.

[6] Poignantly, Plaintiff does not respond to Defendants' description that the injunctive relief Plaintiff seeks is "ambiguous vague, and do[es] not ask for anything beyond an order …directing [Defendants] to follow the law in the future." *See* Opening Memo, p. 10. It appears that Plaintiff himself does not even know exactly what he wants the Court to order in this case, or otherwise agrees with Defendants' assessment.

14

own averments of the events that transpired in response to this motion. This should not be allowed, and accordingly the Court's dismissal should be with prejudice.

Additionally, Plaintiff does not allege any plausible facts upon which he can seek prospective equitable relief under Section 1981 or Title II. Rather, he asserts that he should be able to engage multiple entities in a claim for injunctive relief concerning their compliance with federal discrimination laws based upon his own subjective conclusions about Daniel Botta. There are no facts plausibly alleged in the Complaint which provide any basis for Plaintiff to initiate such a claim. Accordingly, the Court should similarly dismiss Plaintiff's claims for prospective equitable relief with prejudice.

Respectfully submitted,

SAUL EWING ARNSTEIN & LEHR, LLP

By:    */s/ Dena B. Calo*
      Dena B. Calo, Esquire
      1500 Market Street, 38th Floor
      Philadelphia, PA 19102
      (215) 972-7104
      Dena.Calo@saul.com

      Erik P. Pramschufer, Esquire
      1270 Avenue of the Americas, Suite 2005
      New York, NY 10020
      (212) 980-7216
      Erik.Pramschufer@saul.com

      *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby affirm under penalty of perjury that a PDF copy of the foregoing was served on this date on the below counsel, via e-mail, as agreed between the parties:

Steven John Moser, Esquire
MOSER LAW FIRM, P.C.
smoser@moseremploymentlaw.com
dfaulkner@moseremploymentlaw.com
jmoser@moseremploymentlaw.com
kbarrera@moseremploymentlaw.com

*Attorney for Plaintiff*


Dated: June 3, 2020                                */s/ Erik P. Pramschufer*
                                                    Erik P. Pramschufer