UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DANIEL ANACACY,                                     :
                                                    :
                        Plaintiff,                  :      MEMORANDUM & ORDER
                                                    :      19-cv-7126 (ENV) (RLM)
            -against-                               :
                                                    :
PANERA, LLC, DOHERTY ENTERPRISES,                   :
INC., DOHERTY BREADS, LLC,                          :
JOHN DOE                                            :
                                                    :
                                                    :
                        Defendants.                 :
----------------------------------------------------------------x
Vitaliano, D.J.

      Plaintiff Daniel Anacacy, a Black customer of a franchise restaurant location, initiated this lawsuit on December 19, 2019 against defendants Panera, LLC, Doherty Enterprises, Inc., Doherty Breads, LLC, and John Doe after a Panera cashier stopped him from leaving the restaurant with his pick-up order. Compl., Dkt. 1 at ¶¶ 5–12, 41. Anacacy claims defendants discriminated against him because of his race, thereby violating his right to make and enforce contracts pursuant to 42 U.S.C. § 1981 and violating Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000A et seq. *Id.* at 8–10. He also raises New York common law tort claims for assault, battery, and false imprisonment. *Id.* at 10–11. In addition to compensatory and punitive damages for these violations, the amended complaint seeks declaratory and injunctive relief under 42 U.S.C. § 1981 and Title II of the Civil Rights Act. *Id.* at 11. Defendants have moved to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Dkt. 15. For the following reasons, defendants' motion to dismiss the complaint is granted.

Background[1]

On May 12, 2019, through a mobile phone app, Anacacy placed an online food order for tomato soup and a sandwich from a Panera franchise located in Carle Place, New York ("Carle Place Panera"). *Id.* at ¶ 28. This restaurant accepts online orders with pre-payment through Internet apps like the one on Anacacy's phone. *Id.* at ¶¶ 19–21. When picking up food, customers locate a designated area of the restaurant to retrieve their pick-up order and are not required to show receipt or proof of purchase. *Id.* at ¶¶ 21–27. After successfully placing an order, he arrived at the restaurant wearing a durag, hoodie, and sweatpants, and was able to locate his order at the designated area. *Id.* at ¶¶ 28–29, 33, 36. He alleges that, from the time he entered the store, a cashier (defendant John Doe) was watching and following him through the restaurant. *Id.* at ¶¶ 30–40. After retrieving his order, Anacacy headed to the drink station where he obtained a cup of water. *Id.* at ¶¶ 36–38. He claims that the cashier followed him to the drink station, stared at him intently, and left briefly, only to return and continue to stare at him, making Anacacy "feel very uncomfortable." *Id.* at ¶¶ 37–40.

Having completed his order, purchase, and pick-up, Anacacy then attempted to leave the restaurant, but claims that John Doe stood directly in his path and physically prevented him from leaving. *Id.* at ¶ 41. Doe demanded to see his receipt and "attempted to grab [plaintiff's] bag of food." *Id.* at ¶¶ 42–45. During this skirmish, Doe came into contact with Anacacy and ripped the bag of food, causing it to fall out of the bag and onto the floor. *Id.* at ¶¶ 46–48. Anacacy

---

[1] Background facts are drawn primarily from the complaint. *See Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263, 283 (S.D.N.Y. 2015) (explaining that, when evaluating a 12(b)(6) motion, "a court may consider the complaint, any written instrument attached to the complaint as an exhibit, or any statements or documents incorporated in it by reference, as well as matters of which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit." (alterations, citation and internal quotation marks omitted)).

asked the cashier, "what the fuck are you doing?" to which the cashier responded that he "just wanted to know if that's [his] food." *Id.* at ¶¶ 50–51. As Anacacy reached down to pick up his food from the floor, he asked to see the cashier's manager. *Id.* at ¶ 52.

When Daniel Botta, a white male and the general manager of Carle Place Panera, arrived, Anacacy explained what happened and showed Botta his receipt. *Id.* at ¶¶ 58–63. Botta admitted that Panera employees are not supposed to follow customers through the restaurant or demand to see food orders that have been picked up. *Id.* at ¶ 65. The manager then re-bagged his food that had been picked up off the floor. *Id.* at ¶ 67. He also promised Anacacy that he would talk to the cashier and told him to "come back" at which point he would provide a further explanation for the conduct. *Id.* at ¶¶ 67–68.

Setting the stage for his retelling, Anacacy alleges that, at the time of his confrontation with Doe who, Anacacy says, was a Hispanic man, Anacacy was the only Black customer in the Carle Place Panera. *Id.* at ¶¶ 31, 49. He also claims that he was embarrassed and humiliated by the incident, which occurred in front of other customers and employees. *Id.* at ¶¶ 54–55.[2]

Anacacy returned to Carle Place Panera a week later, where he and his fiancé discussed the May 12 incident with the same manager, Botta. *Id.* at ¶¶ 69–86. Despite having listened to Anacacy's concerns about racial profiling and the alleged assault and battery, the manager, plaintiff says, merely said that he had "spoke[n] to the kid and he said he didn't do anything wrong." *Id.* at ¶ 74. Botta then told Anacacy "I don't know what you want me to do" and declined to review the video surveillance. *Id.* at ¶¶ 77–78. Botta also dismissed any suggestions that Doe's actions were racially motivated. *Id.* at ¶¶ 81–86.

---

[2] Although the complaint states there were other customers at the restaurant at the time, it does not say how many. The complaint also does not state the race of any other customer, other than none were Black.

3

## Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Although a court "must accept as true all material factual allegations in the complaint," it must not draw inferences favorable to the party asserting jurisdiction, *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), and it may consider evidence outside the pleadings, *Makarova*, 201 F.3d at 113. Subject matter jurisdiction is a threshold issue, so when a defendant moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). Then, when considering a Rule 12(b)(6) motion, a court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

Discussion

I. 42 U.S.C. §1981

Anacacy claims defendants discriminated against him because of his race, in violation of 42 U.S.C. § 1981, which provides that "all persons within the jurisdiction of the United States. . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. §1981. Shaping his grievance to pass through the doorway to federal court, Anacacy's chief contention is that, unlike other customers of Carle Place Panera, he was denied benefits of his bargain and sale contract with Carle Place Panera by defendants due to his race.

Defendants protest that Anacacy's § 1981 claim fails to state a claim sufficient to survive 12(b)(6) attack. "To establish a claim under §1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts . . .)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). For purposes of their motion, defendants do not dispute that Anacacy is a member of a racial minority. Def. Mem., Dkt. 15-2 at 6. Nor do they dispute that the facts give rise to a plausible inference of racially discriminatory intent on their part. *Id.*[3] But, defendants do contend that Anacacy is

---
[3] To satisfy the second element, the complaint must not describe mere "naked assertions of discrimination, but rather must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 391 (S.D.N.Y. 2006), *aff'd sub nom.*, 85 F. App'x 38 (2d Cir. 2010) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713–14 (2d Cir.1994)). This standard has been found to be met, for example, where a plaintiff "describ[ed] defendants' actions in detail, and alleg[ed] that defendants selected them

5

unable to vault the final hurdle; that is, they argue he has failed to properly allege that any discriminatory treatment interfered with his right to "make and enforce contracts." *Id.*

To satisfy the third element of a § 1981 claim, plaintiff must demonstrate that defendants' discriminatory acts concerned contractual activities enumerated under the statute. *See Clark v. City of New York*, No. 13-CV-210, 2014 WL 4804237, at *3 (E.D.N.Y. Sept. 25, 2014). The scope of protection under § 1981 includes all contractual rights throughout the course of formation, performance and termination of a contract. *Compare Perry v. Burger King Corp.*, 924 F. Supp. 548, 552 (S.D.N.Y.1996) (holding use of customer bathroom within scope of contractual relationship between customer and fast food restaurant), *with Bishop*, 414 F. Supp. 2d at 392 (holding contractual relationship in sales contract terminates at completion of sale for purposes of § 1981 claim).

Anacacy claims that defendants' discriminatory conduct infringed upon his equal right to the "enjoyment of all benefits, privileges, terms, and conditions" of his contractual relationship with Panera. Pl. Opp'n, Dkt. 15-4 at 3; 42 U.S.C. § 1981. Specifically, Anacacy protests that he had a right to purchase and receive his food free from confrontation and assault. Pl. Opp'n at 5. Defendants interfered with this right, Anacacy contends, when the cashier caused his purchase to fall to the floor as he was attempting to leave with it. *Id.* Moreover, when the situation was brought to the manager's attention, instead of bringing him a new order, the order that had fallen to the ground was merely re-bagged and given to plaintiff. Compl. at ¶ 67.

Defendants protest that any contractual right Anacacy possessed ended when he took possession of the food he had purchased online. Def. Mem. at 7. Doe's subsequent acts,

---

for maltreatment solely because of their color." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003) (internal quotation marks omitted). The confrontation between plaintiff and the Panera cashier meets this threshold.

preventing plaintiff from leaving the premises and causing the food to fall, are, they argue, beyond any contractual right under the bargain and sale purchase, and, thus, beyond the purview of § 1981. *Id.* In support of their claim, defendants cite to cases where courts have held that for single transaction purchases at retail stores, the contractual relationship between the parties ends immediately after a plaintiff makes his purchase and receives the item. As this line of cases hold, discriminatory acts occurring after the discrete purchase, including confiscation, do not affect a plaintiff's contractual rights, and are not violations of § 1981. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001) (dismissing Section 1981 claim where grocery store confiscated beef jerky without a refund because no contractual relationship existed after completion of purchase); *Bishop*, 414 F. Supp. 2d at 392 ("[T]here is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction—the purchase of goods." (internal quotation marks and citations omitted)). Defendants claim that the present case is more akin to these single purchases at a grocery or toy store than to cases involving the right to dine at restaurants, which encompass more than just the right to food. *See Arguello v. Conoco, Inc.*, 330 F.3d 355, 360–61 (5th Cir. 2003) ("[D]ining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased. Restaurants are, in that respect, significantly different from retail establishments.").

Keeping faith with the obligation to view them in the light most favorable to plaintiff as the non-movant, the facts as alleged by Anacacy make his case indistinguishable from the precedent cited by defendants which dismiss § 1981 claims on the grounds that after a purchase is completed, no contractual duties are owed by either party. *Youngblood*, 266 F.3d at 854; *see also Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) (holding that no § 1981 claim

7

exists where the claimant had completed her purchase at the time of her altercation with defendant and noting that "[v]irtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase"); *Chu v. Gordmans, Inc.*, No. 8-CV-182, 2002 WL 802353, at *6 (D. Neb. Apr. 12, 2002) (no genuine issue of material fact where plaintiff completed her purchase without interference and products were confiscated after she was done shopping). To better grasp the rationale of this line of precedent, a more detailed explanation of facts might be helpful. In *Youngblood*, for instance, after a plaintiff paid the cashier and received his purchased beef jerky from the store, he tried to exit the store, but was stopped by an employee who asked for his receipt. *Youngblood*, 266 F.3d at 853–854. Youngblood gave the employee his receipt and bag, but after observing that the cannister appeared "crammed full" of beef jerky, the employee confiscated his purchase. *Id*. Yet notwithstanding the fact that the plaintiff's merchandise had been taken away without a refund, the 8th Circuit held that no § 1981 claim existed because once the plaintiff paid the cashier and received his beef jerky, the contractual relationship ended and the later actions of the employee, including confiscation of the merchandise, occurred while there was no contractual relationship then existing between the parties. *Id.* at 854–855.

The facts here are strikingly similar to those in Youngblood. Specifically, Anacacy has alleged a discrete transaction—the purchase and receipt of a food order—which was completed, as he unambiguously pleads, without any interference from Panera or its employees. The altercation between Anacacy and the cashier, which forms the basis of Anacacy's § 1981 claim, did not occur until after Anacacy attempted to leave the restaurant with his food order in hand and the transaction completed. At the point of conflict, a contractual relationship no longer

existed nor was one being pursued. Furthermore, the fact that these events occurred at a restaurant, as opposed to a grocery store, does not change the analysis in the instant case. Nothing in the complaint suggests that Anacacy intended to then dine at the restaurant as part of the order he had placed. Indeed, he pleads the opposite. He claims that he had placed a take-out order and that the altercation took place after he completed that transaction and was accosted on his way out. The alleged facts unambiguously describe a single purchase of a take-out order, that was completed without interference.[4] Consequently, on these facts pleaded by Anacacy, no valid § 1981 claim exists. *See Rogers*, 135 F. Supp. 2d at 1315.[5]

II. <u>Declaratory and Injunctive Relief</u>

---

[4] Plaintiff also claims that Panera interfered with his ancillary contractual benefit when Doe followed him to the drink station and "stared intently" at him, making him feel "very uncomfortable." Compl. at ¶¶ 37–40. But numerous courts have held that "mere surveillance does not give rise to a claim under section 1981." *Pierre v. JC Penney Co., Inc.*, No. 03-CV-4782, 2006 WL 407553, at *6 (E.D.N.Y. Feb. 21, 2006); *Garrett v. Tandy Corp.*, 295 F.3d 94, 101 (1st Cir. 2002) (holding plaintiff was not deprived of his contractual rights when the staff put him under surveillance while he was at the store "because the appellant has not alleged that the surveillance entailed harassment or otherwise interfered with his ability to make desired purchases"). Allegations about being stared at and followed, accordingly, do not sufficiently state a § 1981 claim.

[5] Plaintiff also raises in his opposition brief a variety of contractual rights that Panera allegedly broke that are not listed anywhere in the complaint. First, Anacacy claims that Botta created a continuing duty to Anacacy when he told him that he would have an answer for the cashier's actions when Anacacy returned to the restaurant, which Botta failed to uphold. Anacacy also claims that Panera broke its promise listed on its website—that they would provide customers with a warm, welcoming, and comfortable environment. Finally, Anacacy contends that Panera violated the terms of its contractual relationship when it gave him food that had touched the floor and violated the New York Sanitary Code. None of these allegations are included in the complaint and, therefore, cannot be used to support his § 1981 claim. *See Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."). More importantly, it is far from clear that any of these allegations establish a contractual right independent of Anacacy's bargain and sale purchase. And, to the extent that they do not, the alleged wrongful conduct occurred after the bargain and sale transaction was completed and would, therefore, be barred by § 1981 anyway.

In addition to compensatory and punitive damages, Anacacy also seeks a declaration that the discriminatory practices of the corporate defendants violates Title II of the Civil Rights Act of 1964[6] and § 1981, and an injunction against corporate defendants from engaging in any act which abridges these rights, and to take "affirmative steps as may be necessary to remedy past unlawful conduct and prevent future unlawful conduct." Compl. at 11. Defendants contend that these requests are improper because plaintiff's claims are based on past harms only and therefore, plaintiff lacks standing to seek such relief.

To establish Article III standing, a party must show that (1) he "ha[s] suffered or [is] imminently threatened with a concrete and particularized 'injury in fact'" (2) that is "fairly traceable to the challenged action of the defendant" and (3) that is "likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 134 S.Ct. 1377, 188 L. Ed. 2d 392 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L. Ed. 2d 351 (1992)). But, a past transgression alone is not enough to claim prospective relief. "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Browne v. Hynes*, 720 F. App'x. 92, 93 (2d Cir. 2018) (summary order) (citing *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998); *see also H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016).

Fatally, plaintiff's allegations are based entirely on a single incident that occurred two years ago. In his complaint, Anacacy does not allege any facts suggesting a likelihood that he will be discriminated against again in the future. He fails to identify a policy, practice, or pattern

---

[6] The parties do not dispute that Carle Place Panera is a "place of public accommodation" under Title II of the Civil Rights Act of 1964. Compl. at ¶ 95; Def. Mem. at 10.

of discrimination by defendants, for instance. Nor does he even allege that he will return to Carle Place Panera. Instead, he argues, in his opposition papers and without any factual anchor in the complaint, that, because he still has an active Panera mobile application on his phone, he has a continuing relationship with Panera; and because he lives close to Carle Place Panera and believes that the manager and cashier he interacted with are still employed at that Panera, there is a likelihood that he will experience such discrimination again.

Strikingly, these allegations are raised for the first time in plaintiff's opposition papers. They appear nowhere else. They shall not be considered on this motion. First, it is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *See LaFlamme v. Societe Air France,* 702 F. Supp. 2d 136, 148 n. 18 (E.D.N.Y. 2010). But even if the Court were to consider these factual allegations as plausibly pleaded, they are still insufficient to establish standing. That Anacacy continues to use the Panera mobile application, for example, does not establish a likelihood that this harm will occur again. His argument that he may return to Carle Place Panera and be subjected to the same treatment is based on little more than speculation and conjecture. In short, even assuming that they had been plausibly and properly alleged in the complaint, these assertions in Anacacy's motion papers are insufficient to demonstrate the threat of "real and immediate" harm necessary to plead standing for declaratory or prospective relief and thus Anacacy's claims for declaratory and injunctive relief are dismissed. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L. Ed. 2d 675 (1983) (An "injury or threat of injury must be 'real and immediate,' not 'conjectural' or 'hypothetical.'); *Blamah v. New York*, No. 19-CV-9234, 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020) ("[A] plaintiff who merely asserts she has suffered discrete acts of past discrimination and retaliation by a defendant has not demonstrated an ongoing constitutional

11

violation (internal quotation marks and alterations omitted)); *James v. American Airlines, Inc.*, 247 F. Supp. 3d 297, 306 (E.D.N.Y. 2017) (victim of a single past act of discrimination without any facts suggesting a policy, practice, or pattern of discrimination insufficient to sustain claim for prospective relief under Title II).

## Conclusion

In accord with the foregoing, defendants' motion is granted. Anacacy's federal law claims are dismissed with prejudice. Because, on the strength of the facts plaintiff has already pleaded, any attempted amendment would be futile, leave to amend the dismissed federal claims shall not be granted. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

In light of its threshold dismissal of all federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), which are dismissed, without prejudice to refiling in a state court of appropriate jurisdiction.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       May 30, 2021

/s/ ENV
ERIC N. VITALIANO
United States District Judge